Thomson, J.,
delivered the opinion of the court.
On the 20th day of February, 1890, Rosalie Falk executed and caused to be recorded the following instrument:
*474 “This indenture, made this 20th day of February, A. D. 1890, by and between Rosalie Falk, of Glenwood Springs, in the county of Garfield and state of Colorado, party of the first part, and Chas. W. Darrow, assignee, for the use and benefit of all the creditors of the said Rosalie Falk, of said Glenwood Springs, party of the second part, witnesseth:
“ That whereas, the party of the first part is indebted to divers persons in considerable sums of money, which she is unable at present to pay in full, and she is desirous to convey all her propertj^ for the benefit of all of her creditors, without preference or priority other than that provided by law,
“ Now, the party of the first part, in consideration of the premises, and of one dollar to her in hand paid by the party of the second-part, hereby grants, bargains, sells, assigns and conveys unto the party of the second part and his heirs and assigns and successors in trust, all his lands, tenements, hereditaments, goods, chattels, property and choses in action, of every name, nature and description, wheresoever the same may be, except such property only as is exempt by law from attachment,
“ To have and to hold the said premises unto the said party of the second part, and his heirs, assigns and successors in trust.
“ But in trust and confidence, nevertheless, to sell and dispose of the said real and personal estate, and to collect the said choses in action, using a reasonable discretion as to the times and modes of selling and disposing of said estate, as it respects making sales for cash or credit, at public auction or by private contract, and with the right to compound for the said choses in action, taking a part for the whole, where the trustees shall deem it expedient so to do; then in trust to dispose of the proceeds of the said property in the manner following, viz:
“ 1st. To pay all such debts as by the laws of the United States or of this state are entitled to a preference in such cases.
*475 “ 2nd. To pay the costs and charges of these presents, and the expenses of executing the trusts declared in these presents.
“ 3rd. To distribute and pay the remainder of the said proceeds to and among all the.creditors of the party of the first part, ratably, in proportion to the amount of their respective claims and according to the true intent and meaning of the act of this state in such cases made and provided.
“ And if there should be any surplus after paying all the creditors aforesaid, then in trust:
“ 4th. To pay over such surplus to the party of the first part, his heirs, executors, administrators and assigns.
“ And the said party of tire first part hereby constitutes and appoints the party of the second part his attorney irrevocable, with power of substitution, authorizing him in the name of the party of the first part, or otherwise as the case may require, to do any and all acts, matters and things to carry into effect the true intent and meaning of these presents which the party of the first part might do if personally present.
“ And the party of the second part, hereby accepting the trust, covenants to and with each of said creditors and party of the first part, to execute the same faithfully.
“ And the party of the first part hereby covenants with the said trustee, from time to time, and at all times when requested, to give him all the information in his power respecting the assigned property, and to execute and deliver all such instruments of further assurance as the party of the second part shall advise to be necessary in order to carry into effect the true intent and meaning of these presents, and said party of the first part annexes hereto an inventory under oath of all her real and personal property according to her best knowledge, information and belief, together with her estimated value of the said property; and also annexes hereto a list of all her creditors; with their names, their residences and amounts of their claims, respectively, to all of which reference is hereby *476 made, and which are made part and parcel hereof, the same being marked ‘ schedule A ’ and ‘ schedule B,’ respectively.
“In testimony whereof the parties hereto have hereunto set their hands and seals the day and year first hereinabove written.
“ Rosalie Falk. (Seal)
“C. W.Dabbow. (Seal)”
“ State of Colobado, ) gg “ County of Gabfield, )
“ I, Clifford C. Parks, a notary public within and for said county in the state aforesaid, do hereby certify that Rosalie Falk, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument of wilting, appeared before me this day in person and acknowledged that she signed, sealed and delivered the said instrument as her free and voluntary act, for the uses and purposes therein set forth.
“ Given under my hand and notarial seal this 20th day of February, A. D. 1890.
“ (Seal) Cliffobd C. Pabks,
“Notary Public.”
Annexed to the instrument is an inventory of property, and a list of creditors, marked respectively, schedule A and schedule B.
On the 26th day of August, 1890, Liebes Bros. & Co. caused a writ of attachment, which had been issued in an action commenced by them against Rosalie Falk, to be levied upon lots 30, 31 and 32, in block 34, in Glenwood Springs, Garfield county, as her property. These lots do not appear in the inventory. Charles W. Darrow, the grantee in the foregoing deed, intervened, claiming the property, and praj'ing the removal of the cloud upon his title, created by the attachment levy. Afterwards, in the course of the execution of the trust confided to him by the deed, Darrow, acting under the orders of the district court, and with its approval, sold and conveyed the attached property to N. Falk, who was thereupon substi *477 tuted as intervenor, and filed his supplemental petition in intervention. The subsequent proceedings in the cause were conducted in his name as. substituted intervenor. At the hearing the intervenor offered in evidence the deed from Rosalie Falk to Darrow, together with the annexed inventory and list of creditors. Objection by the defendant, on a variety of grounds, to the introduction of these documents, was sustained, and the intervenor being therefore unable to prove title in himself, was nonsuited. He appeals to this court from the judgment of nonsuit.
The only question in this case is whether the deed to Darrow was a valid assignment for the benefit of creditors. If it was, the judgment must be reversed; if not, it must stand. The objections urged to the deed are, first, that it does not have the effect of conveying all of the property of the grantor, because the property in question here was omitted from the inventory; second, that there was no affidavit to the inventory and list of creditors as required by law; third, that the deed does not provide for the distribution of the grantor’s property among all her creditors, according to their respective claims, because the list of creditors is incomplete ; and fourth, that the deed conferred upon the assignee the power to sell on credit, and to use his own discretion as to time and method of making sales.
I. The deed is, in terms, a conveyance to Darrow of all the lands, tenements, goods, chattels, property and choses in action, of the grantor of every name, nature and description, wheresoever the same may be, except property exempt by law. Assignments for the benefit of creditors in this state are regulated by the act of the legislature of April 10, 1885. Session Laws, 1885, p. 43. The first and second sections are as follows:
Section 1. “ Any person may make a general assignment of all his property for the benefit of his creditors, by deed, duly acknowledged, which, when filed for record in the office of the clerk and recorder of the county where the assignor resides, or, if a nonresident, where his principal place of *478 business is, in this state, shall vest in the assignee the title to all the property, real and personal, of the assignor, in trust, for the use and benefit of such creditors.”
Sec. 2. “ The assignor shall annex to such assignment an inventory, under oath, of his estate, real and personal, according to the best of his knowledge, with the estimated value thereof, and also a list of his creditors, giving their names, residence if known, and the amount of their respective demands ; but such inventory shall not be conclusive of the amount of the assignor’s estate, nor shall the omission of any property from such inventory defeat the assignment or conveyance of the same.”
Construing these two sections together, it seems quite clear that the effect of a deed of assignment must be determined from its own language. If it, in terms, embraces all the property of the assignor, it is, in so far, a compliance with the law. The annexed inventory was not intended to be a part of it, or to limit its effect, or in any manner control its operation. This is evident from the language used in reference to what the inventory shall contain. It is not required to be correct absolutely, but only to the best of the assignor’s knowledge; and in order to avoid any confusion as to its purpose, the statute expressly provides that it shall not be conclusive, but that the omission from it of any of the assignor’s estate shall not defeat the assignment or conveyance of the omitted property. Besides, it is the deed which, by the terms of section one, vests in the assignee the title to the property; and by the terms of section two, the inventory and list are merely annexes. It is therefore by the language of the deed that the title of the assignee must be determined, without reference either to the inventory or the list of creditors. The exception in this deed of property exempt-by law from execution is permitted by section 24 of the act.
Counsel refers us .to the case of Palmer v. McCarthy, 2 Colo. App. 422, as sustaining his position upon the effect of the inventory. In the opinion in that case the following passage occurs:
*479 “It is a well settled rule of construction that when the deed in general terms purports to convey all the property, and afterwards enumerates and designates the property assigned, such special designation controls the general words, makes the assignment special instead of general, and renders the deed inoperative and void.”
It will not do to detach this from the remainder of the opinion, and cite it as a construction of the statute. By isolating a passage from its context in a treatise upon any subject, a meaning may be extracted entirely different from what the author designed. To ascertain what the court intended in making, in the course of a decision, a general statement of a legal principle, the statement must be considered in the connection where it occurs, and be interpreted by the facts of the particular case in which it is used. There is no question of the correctness, considered as a general proposition, of the rule announced by the learned author of the opinion; and there is no question of its applicability to the facts of the case which he was considering. The assignment there was of the accounts, debts, goods, etc., named and specified in a schedule and inventory to be thereafter filed; and he supplements the paragraph quoted with the following language, from which it can readily be seen how he intended to be understood:
“ There are in the deed of conveyance no words evidencing either the desire or intention to convey all the property of the assignor. The only conclusion that can be legally deduced from the language used is that the assignment was to be special, of the property enumerated, viz. ‘all of the accounts, debts, dues, notes, bills, bonds and demands, goods, wares and merchandise, named and specified in a schedule and inventory to he hereinafter filed.' The language used, instead of negativing every presumption that there was other property, not conveyed, would clearly indicate that the property conveyed was specially selected and set apart from the body of the estate. It follows from the authorities cited that in this respect the deed was void and invalid.”
*480 While the rule with which counsel confronts us was properly announced in that case, and, as stated, is explanatory of the conclusion reached upon the facts, it has no applicability whatever here. The title to the lots constituting the subject-matter of this suit passed to the assignee by the deed, provided the assignment was otherwise good.
II. The next objection is that there was no affidavit to the inventory and list of creditors, as required by law. This objection does not give us much trouble. The statute does nob require the list of creditors to be verified, but both the inventory aud list were verified. We need not inquire what effect the entire want of an inventory would have upon the deed, because there is no want of anything here which the statute demands. The assignor must annex to the deed “an inventory under oath.” The inventory before us is part of an affidavit which commences as follows: “ The following is a true and complete inventory of all the real and personal property of Rosalie Falk, according to her best knowledge, information and belief, together with her estimated value of the said property, viz.” The inventory succeeds this introduction, and has, appended to it, the following certificate :
“ State of Colorado, j gg “ County of Garfield, j
“ Subscribed and sworn to before me this 20th day of February, A. D. 1890.
“ (Seal) Clifford C. Parks,
“Notary Public.”
If this is not “an inventory under oath,” the words are without meaning. Here again the case of Palmer v. McCarthy is relied on. Counsel has extracted the idea from the language of the decision in that case that the inventory must be followed by an affidavit. This is a misconception of the decision. The following is what was decided: “ The statute, as in all cases where such language is used, requires an affidavit, subscribed by the party, and the certificate of an officer that an oath was administered.” Here was an affidavit, *481 of which the inventory was a part, subscribed by the party, and the certificate of an officer that an oath was administered. Compliance with the law could not well be more' exact.
III. We think it sufficiently appears from the language of the deed that it was made for the benefit of all the assignor’s creditors in proportion to the amount of their respective claims within the meaning of the law. It is true that it makes provision for the payment of preferred debts, and the expenses of executing the trust, and for the ratable distribution of the residue only; but section 25 of the statute provides for the payment of certain specified preferred claims, prior to the payment of dividends to the general creditors, and section 20 provides for the payment of the expenses of the trust. These provisions in the deed for the payment of expenses and preferred claims were unnecessary, but they amounted to nothing more than expressions of what the statute had already declared, leaving the deed to operate precisely as the law provides it shall operate. But counsel’s specific objection is based upon a defective list of creditors. The list of creditors is no part of the deed. The deed itself provides for the distribution of the estate among the creditors, and a creditor’s rights cannot be prejudiced by the omission of his name from the list. There is nothing in the statute from which we can infer that the list of creditors was intended to be any test of the character of the deed.
IV. We have been referred to a number of cases in which it is held that a deed of assignment which empowers an assignee to sell for cash, or upon credit, in his discretion, or to compound, or compromise the debts due the estate, renders the assignment void upon its face, as having the effect to hinder and delay creditors. Generally speaking, this is well settled law. Where an individual incurs an obligation to pay money, it is payable immediately upon its maturity ; and a transfer of property, whether by a deed ostensibly for the benefit of creditors, or otherwise, in such manner that its payment may be defeated or postponed, is a fraud upon the. *482 person to whom the debt is owing. A power in an assignee to sell the property of an insolvent estate on credit is prejudicial to the rights of creditors, because the effect of its exercise would be to delay the payment of their claims. So, also, a discretionary power in the assignee to compromise debts due the estate might be an impairment of the creditors’ rights.
But the statutory conditions under which these decisions were rendered differed materially from those existing here. There was no special statute to be construed which entered into and controlled assignments for the benefit of creditors. There was the same provision of the statute of frauds which we have, that every assignment of any interest in lands, goods or things in action, made with intent to hinder, delay or defraud creditors, should, as against persons so hindered, delayed or defrauded, be void,- but the assignee took the title subject to no restrictions by any statute governing his proceedings in the management and settlement of the insolvent estate. The deed was the source of his powers ; and if ■they were in derogation of the rights of creditors, the latter had no protection against them, except by invoking the law declaring the instrument granting them void. The reasoning of these decisions is, therefore, not applicable to cases arising in tbis state. Here the entire proceedings of the assignee are prescribed by statute. He has no powers except those which the statute gives him. There are two essentials to a valid assignment: first, that it embraces all the property of the assignor; and, second, that it be made for the benefit of all his- creditors in proportion to the amount of their respective claims. A deed containing these requisites, when filed for record, vests in the assignee the title to the assigned property, in trust for the use and benefit of the creditors. His authority, thenceforth, is statutory. From the time when he accepts the trust, down to the time when he makes his final settlement, his duties are minutely prescribed and his powers carefully defined. He is, throughout, under the supervision of the district court. He must give bond with *483 sureties to be approved by the clerk of the court for the faithful execution of his trust; he must report his proceedings from time to time as required; he may be removed by the court, or judge, for neglect in the performance of his duties; he makes sales of real and personal property, subject to the approval of the judge; the collection of debts due the estate, and the recovery of property belonging to it, are regulated by law; dividends are made among the creditors upon the order of the court; and when the estate is fully closed, the assignee and his sureties are discharged by the court or judge. It will thus be seen that the authority of the assignee is derived from the statute, and not from the instrument of assignment. The powers which an assignor may assume to grant by his deed are without effect. If they are in accord with those conferred by the statute, they are superfluous; if not, they are void. The power conferred upon this assignee to give credit upon sales and compound debts, and the power of substitution, are nullities. They are without force, and meaningless-; and, the deed containing the statutory requisites essential to its validity, its effect is not impaired by the presence of superfluous and nugatory matter, which may be rejected from it, and considered as if it were not there. Our law regards assignments of this kind with favor, and where in their important features they conform to the statute, they will be upheld.
The decision of the court that the deed was invalid, and was not receivable in evidence in behalf of the intervenor, was erroneous, and the judgment must therefore be reversed.

Reversed.