Bissell, P. J.
The Mouat Lumber Company brought this action to foreclose a mechanic’s lien filed in August, 1893, by Palmer as their assignee, under a general assignment for the benefit of creditors. It presents numberless questions and in the exercise of their professional right and the performance of their duty, counsel have argued them with much zeal and ability, and ordinarily would have the right to insist on'a decision of the propositions which they present in so far as they were necessarily involved. We cannot fail to remember that the legislature has enacted another mechanic’s lien law for the further protection of material men and lien holders. How it happens that the legislature is constantly changing the law *109 and adding to the rights and enlarging the remedies given to this favored class of people is beyond comprehension. These constant changes impose large and useless labor on the courts for as fast as one section is construed and its meaning and constitutionality settled, if it at all affects the extraordinary rights given those people who sell material an amendment is immediately secured or a new law introduced and passed. Under these circumstances we shall go no farther than to decide what we believe is indispensable to a determination of the controversy. We shall leave all questions touching the constitutionality of the act of 1889 for determination in some controversy where that act is brought by proof and proper procedure under necessary consideration.
In the statement of facts, and in any argument which we shall make respecting them, or of the law, we shall accept the findings of the court. We shall take them as true, and neither consider nor determine their accuracy or the value of the arguments by which counsel seek to overturn them. Proceeding: there is no question about the sale of the materials by the Mouat Lumber Company to one Thomas Freeman, between the 28th of November, 1892, and the 27th day of June, 1893. These dates determine the inquiry, by what law are the rights of the parties to be measured ? The law of 1889 was then in force, and the law of 1893 had not gone into operation. So far as we are able to discover there arises herein no question respecting the differences in the remedy afforded by the act of 1889, or by that of 1893 because the lien was filed in apt time under the law of 1889 and commenced in due time under whatever law was in operation. We shall have nothing further to say on this subject. At the time the lumber company commenced to deliver goods, Thomas Freeman was the owner and remained the owner until February, 1893, when he conveyed to Ross-Lewin by quitclaim deed. The title thereafter was conveyed by RossLewin to Freeman, and then in various ways and at divers times and for sundry reasons, which we need not point out, the title was shuffled backwards and forwards between Free *110 man and Osborn, one of the appellants, and one of the defendants in the suit, as the situation, circumstances and dealings between those two parties seemed to require. Osborn was the prospective purchaser of one of the three houses which were being built. To place various liens and incumbrances on the property, the transfers between Freeman and Osborn were apparently made. At all events the title to all the property was transferred to Osborn on the 23d of June, 1893. Thereafter Osborn 'deeded to Freeman on the 3d of July, 1893, the corner lot described as 42 by 100. After an incumbrance had been placed on it, this was redeeded on the same day by Freeman to Osborn. By this deed the title to the four lots, being lots 1 to 4, block 29, Wyman’s Addition to Denver, vested in Osborn prior to the filing of the lien or the commencement of the suit. We have been thus exact in stating the status of the legal title because thereon is predicated a question which we regard as decisive of the validity of this lien claim, and it is the principal proposition on which the opinion rests. This was the evidence and this was the condition at the time of the submission of the case and its original decision by the court and the announcement of its findings and conclusion and prior to the preparation and signature of the final decree. Up to this time there had been no evidence whatever tending to show any interest by Freeman in any of the property, that is, no competent evidence establishing his equitable interest. After the court had announced its conclusion and directed the parties to prepare a decree, the case was continued for the term, and at a subsequent term, on the 24th of April, 1897, there was another hearing evidently to enlighten the court as to a question which had been suggested by counsel respecting the enforcement of the lien. To make this matter clear it must be stated that the property cornered on York street and Colfax avenue. As the addition was laid out, the four lots faced York, but as the houses were built the frontage of the four lots was changed and the three houses were made to face on Colfax avenue, thus crossing all four lots at right angles to their *111 length. How the lots were divided, or how much land was allotted to each house, is not clear, nor have' We taken the trouble to dig it out of the record. It is enough to say the houses crossed the lots. The house cornering on York was the one sold to Osborn in April and the one first finished. The other two were probably owned by Freeman, at least he had some equitable interest in them. When we say “ owned ” we only intend to concede he was the owner for the purposes of this opinion, we do not know. As has been intimated, at the ensuing term, some question was made as to the enforcement of the lien on the various houses. The order of the alienation presented an important inquiry, counsel contending the lien was to be foreclosed on the property according to the inverse order of the alienation. A citation was issued to Osborn and he was brought in and gave testimony respecting the status of the title. On that hearing the plaintiff, Freeman and Osborn appeared, and one of the grantees of the property under foreclosure was present by attorney, although he was apparently no party to the record. This shows there was no citation to the Sprague Investment Company, or to Sprague, the trustee of divers incumbrances which had been placed on the property by Freeman intermediate the contract for the purchase of the material, the completion of the houses and the filing of the lien statement and the commencement of the suit. The failure to bring those parties in is one of the errors strenuously pressed on our attention.
The lien embraced all the houses and all the property in one statement, on the apparent theory that there had been no division of the property by Freeman or by Osborn, and no segregation of the portion of the lots assigned to each house either by deed or otherwise. In support of the one lien as applied to all the houses, the appellee insists the material was all sold under practically one contract as to all the houses, or if not sold under one contract but delivered under many contracts, each purchase being separate, yet, in point of fact, the material was all delivered at one place to Freeman, used indiscriminately on the various houses and *112 the lien claimant was without knowledge or information respecting the use of the material, nor can it, nor could it be ascertained into which house any part of the material went. Practically the court found the facts with the appellee, and the case must be decided on this basis. As before indicated the lien was filed by the assignee of the Mouat Lumber & Investment Company. The lumber company made a general assignment for the benefit of creditors on 18th day of July, 1898. This was long after the delivery of the last item of material and after the right to file the lien had vested, though prior to the date when it was put on record. This deed of assignment was general in its terms and conveyed all the rights and interest of every description belonging to the Mouat Lumber Company to Palmer. While he held the title to all the assets of the lumber company he filed this lien, and therein named Thomas Freeman as the owner. In all other respects the lien seems to have been in conformity with the requirements of the statute and there are no defects on its face to which our attention has been called which in any wise invalidates it under the act. The lumber company recovered from its embarrassment, the assignment was vacated and by order of court Palmer redeeded to the lumber company all the property which had been theretofore conveyed to him. It will be noticed it has not been stated the assignment to Palmer or the retransfer from Palmer to the lumber company named this claim either as a specific demand or debt or as a lien claim transferred to the assignee, or by the assignee retransferred to the assignors. On this basis the regularity of these proceedings are also attacked.
We will now advert to another matter to which counsel have addressed considerable argument because it must be disposed of in order to justify the consideration of the matters which we decide. The record shows that the complaint was demurred to and the demurrer sustained on the 28th of May, 1894. Judge Bentley, before whom the case was argued, rendered an opinion which appears in the record, and which was before us when this cause was first here. According to *113 his decision, the act of 1889 was unconstitutional. This he held on the basis of some information which he had obtained in some other litigation. He held since the act of 1889 was unconstitutional, the accuracy and sufficiency of the lien statement must be measured and determined by the act of 1883, and thereunder he concluded it insufficient because it did not show the date when the claimant commenced to work or to furnish the material, nor the date when the last work was done, or the last material furnished. These were the only two propositions which he passed on. The parties stood on their pleading and brought the case to this court for review. It was decided at the September term, 1895, and the opinion appears in the 1th volume of our reports, at page 152. The learned judge delivering the opinion passed on the two questions suggested by Judge Bentley’s decision, and only these two questions were presented by the arguments of counsel on the appeal, and were alone considered by the court in the opinion. This is very manifest to me because I participated in the opinion as did J udge Thomson who is still a member of the court. It is likewise demonstrated by the whole substance of the opinion. The first proposition which it notices respects the alleged unconstitutionality of the law. The court holds that counsel cannot assail the statute because there is nothing in the record on which such an attack can be predicated and the law must therefore be assumed to be valid. This is manifest because the matter respects the manner of its passage which requires proof exhibited only by the records of the two houses, and is necessarily dehors the statute. The other proposition respects only the necessity to show the date when the first or last material was furnished. The court holds there is nothing in the act of 1889, or in the act of 1883 which requires a mechanic’s lien statement to show these dates, and that the statement need not show anything except those facts necessary to its creation, in these words, “The statement must contain all the law requires it to contain, but it need not contain anything more.” This is all there is in the decision, *114 everything it contains, everything which the court considered, everything which it decided. The opinion concludes with the phrase, “the statement is in form in exact compliance with the law of 1889 and is sufficient under that of 1883.” On this last clause counsel predicate their contention.
This contention is, the court has already decided all matters concerning the validity of the statement under the act of 1889 or 1883, and it is not competent for counsel to raise or present any question which respects its sufficiency. The doctrine of res adjudicata is invoked and the general rule which has been expressed by the supreme court in many cases that the matters which have been considered and settled on the former appeal are not open for consideration on a subsequent review. Wilson v. Bates, 21 Colo. 115; Routt v. Greenwood Cemetery Co., 18 Colo. 132. With this doctrine or rule we are in full accord and whenever a case is presented which requires its application we shall undoubtedly follow it. Courts have gone a long ways in the declaration of the rule and we concede there must be grave reasons to justify a departure from it. Property rights and interests may have been settled and foreclosed by the judgment and courts would undoubtedly be very chary about modifying a decision which could in any wise affect or disturb the rights of third parties. Whether there would ever be a departure we do not undertake to determine, but simply suggest that this may not be a rule from which there can be no deviation. We do not intend to enter the territory of many bitter conflicts respecting the law of the case or the power of the appellate court to review and revise its own judgments. This is not a case which calls for the application of the doctrine. There are no circumstances or conditions which compel an examination of the question, or a consideration of our power in the premises. It is always true, that where it clearly appears that on the former hearing the questions subsequently debated were not considered, and that the judgment both of the lower court and of the appellate tribunal were based on other grounds, the questions subsequently raised are open *115 for consideration and discussion. It may even be true that the questions subsequently presented to the appellate court might have been, presented on the former hearing, yet, if it plainly appear they were not raised or discussed, the court is not under any principle of former decision precluded from an examination of those questions. This is in accord with the general course of adjudication. Many cases might be cited but one suffices for the purpose. Balch v. Haas, 73 Fed. Rep. 974.
A critical examination of the present record, a close inspection of the former one, a critical analysis of the opinion rendered by Judge Thomson combine to establish the point. The questions we shall decide in this opinion were in no manner presented or considered on the former appeal, and there is nothing in the former opinion which forecloses the discussion. We shall therefore proceed to examine those matters which we deem determinative of the issue.
Disregarding the order of argument adopted by counsel, we will first consider the proposition respecting the assignability of a lien claim. The question has been considered in many courts and under many different statutes. Some permit the assignment of the lien, others are silent on the subject, and still others permit the assignment of the lien right. The decisions have been rendered under different statutes and the courts have reached different conclusions. Soine have held that neither the claim nor the perfected lien were assignable without direct statutory authority. Others have decided the perfected claim assignable although the lien right could not be made the subject of transfer. Still others have gone to greater lengths and have held both the perfected lien and the right assignable, and that either the one or the other follows the transfer of the debts as would any ordinary security by way of mortgage or trust deed, if the debt secured was transferable under the law or the statute. It is needless to express our concurrence or approbation of any one of these theories because our statute in direct terms, both the act of 1883 and of 1889, gives a party claiming a lien, the right to *116 assign his claim and hen to any person who shall have the rights and remedies of the assignor, and permits this assignment to be made either before or after the filing of the statement. General Statutes, 1883, sec. 2158; Session Laws of 1889, p. 252. The very act which grants the right makes it assignable. It attaches this element of assignability not only to the perfected claim, but to the inchoate right which exists prior to the time the lien is filed, and it confers on the assignee all the rights and remedies of the assignor whether the assignee acquires his title before or after the perfectioof the lien. Since this is true and such is the evident statutory purpose, we cannot regard the right to the lien as a personal privilege unenforceable by the assignee. Our statute seems to bring the case directly within the authorities which hold that these statutes which give a lien intend to give a security for the debt and a security which will follow the transfer of the debt, whether it be evidenced by a promissory note or exist as a debt or book account, which under our statute may be transferred, and where the transfer gives a right of action to the assignee as the real party in interest. We should have no hesitation to reach this conclusion, did the lien statute relate only to the claims of mechanics and laborers who were the original beneficiaries and objects of this legislation. It would undoubtedly add to this security, add to the value of the claims and secure the benefits, objects and purposes of mechanic’s lien laws. It benefits the claimant and in no manner injures the debtor. Whether we should be inclined to accept this doctrine in favor of material men, if they were the only persons to be benefited, we do not decide. It is enough to hold the claim assignable by the very terms of our statute, and to adopt the decisions announcing this rule, even though they may have been rendered on statutes in terms less comprehensive. Midland Ry. Co. v. Wilcox, 122 Ind. 84; McDonald v. Kelley, 14 R. I. 335; Jones v. Hurst, 67 Mo. 568; Kinney v. Duluth Ore Co., 58 Minn. 455; Duncan v. Hawn et al., 104 Cal. 10; German Bank et al. v. Schloth et al., 59 Ia. 316. In the light of *117 these authorities and under bur statute as it must necessarily be construed, we conclude the general assignment to Palmer for the benefit of creditors which conveyed all the property, right, title and interest of the lumber company of every description was sufficient to transfer to the assignee this debt and claim, this lien right, and under his deed he had full power to file the lien statement, and otherwise the facts justifying it, acquire a lien on the property. The retransfer of the assets of the company to the corporation would certainly make the lumber company, for the purposes of this litigation, the real party in interest and .entitle it to maintain a suit for the foreclosure of the lien claim.
The description contained in the deed is broad and full enough to transfer the title and the interest of the lumber company to the assignee. Bank v. Roche, 93 N. Y. 374; Turner v. Jaycox, 40 N. Y. 470; Wickham & Pendleton v. Green, 61 Miss. 463; Falk v. Liebes Bros. & Co., 6 Colo. App. 473. Since we are not concluded by our antecedent decision and the lien was properly initiated by the assignee of the lumber company and the suit to foreclose it properly brought by that corporation, we are brought face to face with the question of the sufficiency of the lien statement. It is first attacked on the ground that the facts do not justify the filing of a lien claim on all the houses situated on parts of those four lots. On the record as it stands, we do not believe this to be true. The subdivision of the lots according to the addition, so far as we are able to discover it from the record, made the lots as fronted on York an independent subdivision known by lots numbered 1 to 4 in a specific block. Doubtless the lots would be legally and technically known by this description, and had the houses been on these separate lots according to the platting, the question would have been wholly different. As it is now presented, the houses are on parts of each one of those platted lots. There is nothing in the record and nothing in the transfers made by the various owners to their grantees, to indicate the part or parcel of the lots on which the houses were. built, *118 unless it be as to the house conveyed to Osborn on a piece of ground 42 by 100 on the corner of York and Colfax. It is barely possible this might be a segregation, and if the proof warranted it might compel us to hold a lien, covering all three houses, might not be filed. Where, however, there is practically no segregation of the lots and no description of the land on which the houses are built in the conveyances so that the lienors may be advised respecting it, and where, also, the proof is as here, the lumber went into the houses. indiscriminately, it cannot be true the lienor must at his peril subdivide his claim and assign to each house as built the proportion of the debt which it ought in equity to bear. The evidence shows and the court found the material was delivered from time to time from November, 1892, until June 27, 1893, delivered sometimes at the houses, sometimes at Freeman’s shop on vacant lots to the north of the property. Some of the material went into one house, some into another, and it was impossible by any means known to dealers in material to ascertain which house the lumber or the materials went into. Since this is true, the case is brought clearly within the decisions of this court. Small v. Foley, 8 Colo. App. 435. We see no reason to change our conclusions and unless the law should be otherwise declared in this jurisdiction we must adhere to the rule therein laid down.
The remaining and important question springs from the statement found in the body of the lien as recorded and as stated in the complaint to enforce it, that the name of the owner was Thomas Freeman. If this is not true within the purview of the statute, the lien must of necessity fall. It has time and again been decided that there must be in the lien statement a complete and explicit averment of ownership. This must appear on the face of the claim and there must be a direct allegation of it in the pleading in order to support the suit. The courts have variously expressed it, declaring at times that there must be a positive designation and that it is not enough for it to appear incidentally. It must appear in the body of the statement as an integral part *119 or portion of the declaration of right. It has been directly-adjudged not enough that the name of the owner appear in the address or title which may be affixed to the paper, but it must appear in its body as a declaration by which the lienor or claimant will be bound. Malter et al. v. Falcom Mining Co., 18 Nev. 209; Reindollar v. Flickinger, 59 Md. 469; White et al. v. Mullins, 2 Ida. 1165; Knox v. Hilty, 118 Pa. St. 430; Mayes v. Ruffners, 8 W. Va. 384; West Coast Lumber Co. v. Newkirk, 80 Cal. 275; Armdon v. Benjamin, 128 Mass. 534; Newman v. Brown, 27 Kan. 117; Blathner v. Wadleigh, 48 Kan. 290; Sagmeister v. Foss, 4 Wash. 320; Gordon v. Beal, 23 Ore. 153; McElwee v. Sandford, 53 How. Prac. 89. It seems tolerably well settled the owner at the date the lien is filed is the owner who is to be named as the person charged. This matter was the subject of a very considerable discussion in this court and as the result of the authorities we reached this conclusion. Chicago Lumber Co. v. Dillon, 13 Colo. App. 196; Lumber Co. v. McLeod, 27 Oré. 272; Collins et al. v. Snoke et al., 9 Wash. 566. According to the record Osborn was undoubtedly the owner and held the legal title at the time the lien statement was filed and at the time of the commencement of the suit, subject to various and divers incumbrances which had been placed on the property. According to these authorities then he was the owner for the purpose of a statement, he ought to have been named as such, and not having been named as the owner, the lien statement must necessarily be defective and invalid as against these subsequent incumbrancers and grantees.
We are not unmindful of the circumstance that it appeared from the evidence, introduced at the subsequent term, Freeman did have an equitable interest and ownership in the property. By Osborn’s testimony, which may be enough as against him and might possibly be enough as against Freeman, but whether' adequate as against the other lien claimants or incumbrancers we do not determine, it appears that Freeman was the equitable owner of the houses and the land not embraced in the corner lot and assigned to the house *120 thereon in the deal between Osborn and Freeman. The title may have been held by Osborn simply as a security for the release of an incumbrance of some $4,000 which had been put on the corner property against the agreement and intention of the parties. Just how far this would be binding on Freeman, and whether this evidence of itself would -be enough to afford a remedy as between them, we do not determine. It is wholly unnecessary. All we do decide is, that as against these subsequent incumbrancers and lienors it cannot be true the lien can be good which names Freeman as the owner, when in truth and in fact, according to the record, he had no title whatever. We have not forgotten nor have we overlooked the decisions in this court respecting these matters. Bitter v. Mouat Lumber Investment Co., 10 Colo. App. 807; Maher v. Shull et al., 11 Colo. App. 322. What those cases hold and what they intend to decide undoubtedly is, that this equitable title and equitable ownership is enough as between the lien claimant and the holder of the equitable title. It will prevent the equitable owner from objecting to the statement on the ground of its insufficiency in stating the title or the name of the person who owned the property. We are not inclined to disagree with that theory and conclusion, and if this contest was solely between the Mouat Lumber Company, Osborn and Freeman, we should' hold that it did not lie with Freeman to say he was not the owner and the claim was insufficient as failing to designate the ownership correctly. In a court of equity Freeman would ’not be permitted to contend the lien statement tvas insufficient. We do not think the doctrine which controls in courts of equity and which would bar Freeman from setting up this matter, is at all applicable as against subsequent grantees or subsequent claimants. In the protection of their rights and in the assertion of their incumbrances they may insist the lien claimant must observe the statute if he would obtain a claim which he can enforce against them. This must be time notwithstanding the fact the original contract was made, and perhaps some of the lumber delivered *121 prior to the time these incumbrances were put on record. It is quite true, under the mechanic’s lien law, the doctrine of relation is often invoked and by the courts it is always conceded that a lien when filed relates to the time the work was begun. This doctrine may not be used to disturb vested rights and valid incumbrances. The one who claims the lien-must exactly observe the statute in initiating and perfecting, his right. If. the law then is that the claimant must file his claim and therein state the name of the owner who must be the owner at the date it is filed, it follows that he cannot invoke the equitable doctrine of estoppel against incumbrancers though it might be available against the owner. They are entitled to a distinct observance of the statute and it is their right to insist the claimant must in all respects comply with the act which grants the right and gives the remedy. It is no hardship. It puts no burden on the lien claimant. It in no wise lessens his right or imperils his remedy. The records are open to him. If he follows them he is entirely safe and with the equitable ownership he has nothing whatever to do. If he fails to observe this very simple requirement and relies on an equitable ownership in order to enforce his claim, he must be able to show that the only person to be affected is the one who holds the equitable title. The other incumbrancers may not be hindered or harmed.
We have now considered and disposed of all questions which seem necessary to our conclusion. What we shall say respecting the subsequent hearing at the ensuing term may be wholly unimportant, unless the subsequent proof shall in some way so vary the record as to prevent the application of the principles which we have announced. It is undoubtedly now true in all equitable proceedings as it has always been, the court is quite at liberty after final submission and before the entry of the decree, to reopen the case for the purpose of hearing testimony on any proposition essential to the determination of the suit, or any collateral question involved in the decree. This may be done on the application of counsel or done on the court’s own motion. It is always done *122 wherever counsel question the terms of a decree and further evidence is essential to ascertain and fix the rights of the parties. When this is done, however, it must always be done on notice to those whose rights are to be affected. So far as we can determine from the supplemental record, the hearing was not had on notice to the incumbrancers or to their trustee, and since the testimony had grave bearing on their rights, and those of the holders of the subsequent title, we very gravely question whether the court could take that testimony under the situation as it existed. We do not consider whether the rule respecting the order of sale was or was not right. We have not investigated it. Though property is usually to be sold in the inverse order of its alienation, it may be the rule has no application to alienations by trust deeds or mortgages or other incumbrance, and is only applicable to sales and conveyances by deeds either of warranty or quitclaim. The record is not full enough to raise the question, and since we are of the opinion the proceeding was wholly irregular, and the court proceeded without authority, we simply indicate our disapproval of the practice. It is not important. The case must go back, and whatever evidence the parties desire to offer on this question will be produced in its regular order, and in due time and with notice to all parties.
It may be that since we adjudge the lien insufficient with reference to the statement of ownership, we ought to direct the lower court to dismiss the proceedings. We do not believe it our duty to enter this decree because there may be some evidence respecting the claim that this matter of ownership has been so brought home to the knowledge of all these incumbrancers, that possibly they in equity would occupy the position of the holder of the equitable title, Freeman, and be disentitled to insist on the insufficiency of the statement. This matter we leave entirely open, though we are not at all clear that any circumstances can exist, or evidence be offered which will obviate the necessity to apply this well established principle.
*123 For the reasons which we have presented, the judgment which does not accord with our conclusions must of necessity be reversed.

Reversed.