No. 11,967.

Dawson *v.* Scruggs-Vandervoort Barney Realty Company, et al.

Decided June 11, 1928.

Messrs. Crump & Riley, for plaintiff in error.

Mr. John Horne Chiles, Mr. Jacob L. Sherman, for defendants in error.

*Department Two.*

Mr. Justice Butler delivered the opinion of the court.

W. H. Dawson sued The Scruggs-Vandervoort Barney Realty Company, the Denver Dry Goods Company and Edward O. Lowy to secure a personal judgment against Lowy and to have a mechanic's lien upon certain real property decreed and foreclosed. The court gave him a

personal judgment against Lowy, but held against him on the lien claim.

The realty company owns the real property, and the dry goods company has a ninety-nine year lease of the property. The only question presented is whether the material furnished by the plaintiff became a lienable fixture or remained personalty. The facts are not in dispute. A part of the dry goods company's business consists in selling furs. To store these furs it caused to be constructed in its store building some 15 years ago, when it owned the real property as well as the business, a refrigerating plant and storage room. The storage room is referred to as an icebox, or a refrigerator. It is a room about 20 feet by 20 feet in dimensions and has a top and floor. The brine pipes were installed by being connected up with the refrigerator system and hung on brackets attached to the walls encircling the icebox. The refrigerator system consists of certain fluids used as refrigerates, carried from the basement to the fourth or fifth floor where the icebox, or refrigerator, is located. The brine pipes are used to carry brine, which is circulated by means of a pump that is located adjacent to the outside of the icebox, or refrigerator, and is hooked up by pipes. These pipes go into that system at the back of the building, through some chutes and openings. They are connected up with the brine-cooler, which in turn is connected with the ammonia reservoir in the basement of the building. There is a complete circulation of ammonia from the basement up through the brine-cooler, and of brine from the brine-cooler through these pipes. The brine pipes cool the icebox, or refrigerator. This refrigerating plant has been in use for 15 years. In 1924, while this plant was in the building and used in the business, the dry goods company conveyed the property to the realty company by deed conveying the lots, with all buildings, improvements and appurtenances. After the conveyance, the plant was used in the business the same as it always had been used. In 1926, certain parts of the

plant had worn out and had to be replaced with new material, and the defendant Lowy was employed to make such replacements. The plaintiff manufactured and furnished the brine pipe that was used to replace the old discarded brine pipe. It was installed and connected up in the manner already described.

In their brief, after stating the facts, counsel for the defendants present their views of the law in these words:

"We think it must be said that these pipes were not attached to the building and did not become part of the freehold but could be removed at any time from the walls of the ice box and the box itself could be removed or taken-down and off of the floor of the building without in any manner injuring or defacing the building. The learned trial court held these pipes as part of the ice box could be taken out any time the company ceased to handle furs, and announced there was no need of authorities upon the subject. The general rule is so well settled that a lien cannot be acquired in respect of which articles are not so attached to the building or land as to become a part thereof and which consequently have not lost their character as personalty that we believe the further citation of authorities would be superfluous."

This view, which was adopted by the trial court, applies, as the sole and conclusive test, a test that formerly was of controlling weight, but that, according to the modern doctrine, is reduced to a position of less importance. It is not now considered as absolutely necessary that an article be actually fastened to the freehold in order to make it a part thereof. The all-important questions are the intention of the person who brings it upon the land, the use to which it is to be applied, and its fitness for that use. In *Cary Hardware Co. v. McCarty*, 10 Colo. App. 200, 50 Pac. 744, a case that we have repeatedly cited with approval, it is said:

"Formerly the controlling question in deciding on which side of the line of division an article belonged was: Is there a physical attachment to the realty of a nature

indicating permanence? If there was it became a fixture. If not it was personal property and its disposition was governed by the law applicable to such property. * * * Now it is not absolutely necessary that in order to constitute a fixture, so as to take an article from without the line of personal property, it should be permanently affixed to the freehold by physical attachment. This may or may not be the case. * * * The controlling questions now, in determining as to a large class of articles whether they partake of a real or personal character, are the intention of the party to make a permanent accession to the freehold, and the use to which the article is to be applied. * * * If it constitutes a part of a plant of machinery necessary to the successful operation of the whole, or if its use is essential to the operation of some part of the machinery, which is physically attached to the freehold, then it may in many cases be properly termed a fixture, even though it wholly lacks a permanent physical attachment to the realty. * * * The Colorado statute is among the broadest and most liberal as it expressly provides that the lien 'shall attach to all machinery and other fixtures used in connection with any such lands, buildings or structures.' Gen. Stats. 2148. * * * In this case the articles designated for which it is claimed a lien will not lie, and which are included in the bill of defendants in error, are matte pots, forehearth or receiving hearth, and truax ore cars. * * * Each of these articles was necessary and essential to the successful operation of the smelting plant for the purposes for which it was intended. Each was a component part of the whole. The forehearth was necessary for receiving and separating the matte and slag, the matte pot for removing them and the cars for hauling the slag. A conveyance of the smelting plant, its appurtenances and fixtures would have carried with it all of these articles."

See *Booth v. Central Sav. Bank*, 58 Colo. 519, 146 Pac. 240 (rolling stock of railroad); *Colorado Gold Dredging*

*Co. v. Stearns-Roger Mfg. Co.,* 60 Colo. 412, 153 Pac. 765 (dredge used in operating placer claim) ; *William v. London,* 115 N. Y. S. 547 (ice boxes, or refrigerators, in apartment house) ; *Hooven, etc., Co. v. Featherstone's Sons,* 111 Fed. 81, 49 C. C. A. 229 (engine installed as part of refrigerating machine). See also 11 R. C. L., page 1059, et seq.

The refrigerating plant in question was installed by the owner of both the building and the business; was connected up in the manner described; was intended for continued use in that business; was adapted to that use; and was so used for 15 years; and that it is intended to continue that use, is evident from the fact that it has just been put in condition for continued use. It is by no means certain that the plant is not sufficiently attached to the freehold to meet the requirements of the law as it used to be; that it is part of the freehold under the modern rule seems clear. The plaintiff has a valid lien. He is entitled to have it foreclosed.

The judgment is reversed, and the cause is remanded with direction to enter judgment for the plaintiff.

MR. CHIEF JUSTICE DENISON, MR. JUSTICE ADAMS and MR. JUSTICE CAMPBELL concur.