## No. 17,931.

RABTOAY GENERAL TIRE COMPANY *v.* COLORADO
KENWORTH CORPORATION.

(309 P. [2d] 616)

Decided March 25, 1957. Rehearing denied April 29, 1957.

Messrs. BARRY & HUPP, Mr. JAMES T. AYERS, Mr. F. JOSEPH McGARRY, for plaintiff in error.

Messrs. GRANT, SHAFROTH & TOLL, Mr. CHARLES H. HAINES, JR., for defendant in error.

Messrs. LEWIS, GRANT & DAVIS, Mr. ROBERT B. HARRY, Mr. EDWARD B. TOWEY, Amicus Curiae.

*In Department.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

THIS case involves the relative rights of two purchase money chattel mortgagees.

In early September 1954, Colorado Kenworth Corporation sold a 1951 Kenworth tractor to one Aarol Roberts, whose residence was 7199 Holly Street in Derby, Adams County, Colorado. To secure the balance of the purchase price a chattel mortgage was executed by Roberts on September 10, 1954, which was made an effective lien in compliance with the "Certificate of Title Act," C.R.S. '53, 13-6-1 et seq. This chattel mortgage contained a

provision that the lien created thereby shall extend to all tires "attached to or placed upon" the vehicle. On September 27, 1954, Roberts brought the tractor to the place of business of Rabtoay General Tire Company and purchased six tires which were mounted on the wheels of the tractor, and on that day delivered to Rabtoay his chattel mortgage to secure payment of the balance of the purchase price of said tires, which chattel mortgage was filed in the Clerk and Recorder's Office of Adams County, on October 18, 1954. Later the Rabtoay mortgage was refiled in Adams County for the purpose of having it noted on the certificate of title as a second mortgage on the tractor itself, as required by the "Certificate of Title Act," C.R.S. '53, 13-6-1 et seq. At the trial the court was advised that Rabtoay was not making any claim based upon said second mortgage.

It was stipulated that Roberts operated trucks, including the tractor in question, "between Florida and Seattle, Washington, and that all his trucks, including this particular truck, were licensed in Florida, although the truck is titled in Colorado, and that, at the time of the sale of the tires by the plaintiff to Mr. Roberts, it was known that he was so engaged in trucking operations; that [Rabtoay] filed its chattel mortgage for the tires in Adams County, Colorado, because that was the accepted residence of [Roberts], without regard to the physical location of the Kenworth tractor and the tires at the time of filing, and that between the time when the tires were sold to Mr. Roberts in Denver and there attached to his truck, on September 27, 1954, and the repossession of the tractor by [Kenworth] toward the last of March or first of April, 1955, it is unknown where the truck was physically to be found, and only that it was operated between the Northwest and the Southeast parts of the country."

Kenworth for the first time learned of the Rabtoay mortgage after its repossession of the tractor from Roberts. It was then ascertained that some of the tires

described in the Rabtoay mortgage were on said tractor.

Rabtoay sued Kenworth for conversion of said tires, and at the trial it was stipulated that, in the event Rabtoay prevailed, damages should be assessed in the sum of $135.00. The trial court held for Kenworth, and Rabtoay seeks a reversal of the judgment.

It is not clear from the record whether old tires were traded in on the new tires, and no issue was raised involving the law of replacement. Accordingly, our decision will be confined to this narrow question: under the facts stated, did Kenworth obtain title to the tires that were on the tractor at the time of repossession?

Kenworth contends that by virtue of the language of C.R.S. '53, 13-6-19, it was necessary that Rabtoay's mortgage on the tires which it sold to Roberts be noted on the certificate of title to Roberts' tractor, in order to be valid against Kenworth. This section is part of the "Certificate of Title Act." So much of the section as is germane to a consideration of Kenworth's contention is quoted:

"The provisions of chapter 20, CRS, relating to the filing, recording, releasing, renewal, and extension of chattel mortgages, *as the same is hereinbefore defined in section 13-6-2,* shall not be applicable to nor shall the said provisions of said chapter apply to the *mortgaging of motor vehicles.* Any mortgage intended by the parties thereto to encumber or create a lien *on a motor vehicle,* to be effective as a valid lien against the rights of third persons, purchasers for value without notice, mortgagees or creditors of the owner shall be filed for public record and the fact thereof noted on the owner's certificate of title . . ." (Emphasis supplied.)

Section 13-6-2, to which reference is made in the above-quoted portion of the Act, is the definitive section. Certain definitions therein shed light on the question of whether it was incumbent upon Rabtoay to have the mortgage on the tires noted on the certificate of title to Roberts' tractor.

As used in the Act, "motor vehicle" means "all vehicles propelled by power, other than muscular power; trailers, semi-trailers and trailer coaches," and excepting from said definition certain vehicles, which exceptions have no bearing on this case; "vehicle" means "any motor vehicle as hereinabove defined"; "mortgages" or "mortgage" or "chattel mortgage" means "chattel mortgages, conditional sales, contracts, or any other like instrument intended to operate as a mortgage or to create a lien *on a motor vehicle* as security for an undertaking of the owner thereof or some other person."

Other sections of this Act are just as illuminating in regard to the coverage intended by the legislature. Thus, section 13-6-3 limits the application of "the provisions of this article" "to motor vehicles as defined in section 13-6-2." "The holder of any chattel mortgage *on a motor vehicle* desiring to secure to himself the rights provided for in this article, and to have the existence of the mortgage and the fact of the filing thereof for public record noted on the certificate of title to the motor vehicle thereby encumbered," is directed by the terms of section 13-6-20 to "present said mortgage or a duly executed copy or certified copy thereof, and the certificate of title of the motor vehicle encumbered, to the authorized agent of the director in the county, or city and county in which the mortgagor of such motor vehicle resides, or where the property is located." By section 13-6-28, like provision is made for the protection of holders of second or junior mortgages on motor vehicles.

Our study of the "Certificate of Title Act" convinces us that certainty is the mark of this Act insofar as chattel mortgage coverage is concerned. We must give it the narrow application which the letter and the spirit of the Act clearly indicate, and hold that section 13-6-19 relates only to mortgages on "motor vehicles." A similar statute was so construed in the case of *Goodrich Silvertown Stores v. Brashear Freight Lines*, (Mo. App.) 198 S.W. (2d) 357. See *Free Service Tire Co. v.*

*Manufacturers Accept. Corp.*, (Tenn. App.) 277 S.W. (2d) 897. Any other construction would do violence to the explicit language of the Act. To enlarge the scope of the Act to include the mortgage on the tires here involved would be an act of judicial legislation, and this we are, and should be, powerless to do.

Kenworth's attack is bifronted. In addition to its contention of which we have just made disposition, Kenworth maintains that Rabtoay's chattel mortgage, filed under the general chattel mortgage statute, is invalid because it was not filed or recorded at the place where the chattel was situated. According to the stipulation, neither Kenworth nor Rabtoay knew where the truck was physically to be found; they knew that it was being operated between the Northwest and the Southeast parts of the country. The record is devoid of any evidence directly on the matter of the location of the mortgaged property.

C.R.S. '53, 20-1-8, requires that chattel mortgages be filed or recorded in the Office of the Clerk and Recorder of the county "in which the mortgaged property is situated." In *Stitt v. Spengel Co.*, 58 Colo. 559, 146 Pac. 770, the court construed the prior statute, and in so doing, held that the situs of the mortgaged property, for purposes of recordation, should be "where it is located and kept, not by making such record in the county whence the property came. * * * If the statute is to have force and effect consistent with the apparent legislative intent, as gathered from its context, the words 'shall be situated' must be held to mean permanently situated."

Here we are dealing with ambulatory personal property. Implicit in the facts of this case is recognition that the tractor in question was to be used for hauling and necessarily would be traveling. The very nature of the chattel involved is mobility; its very purpose is continual transportation. But the tractor, as any other personal property, must have a situs. Regardless of the

fact that it may be in constant movement, a motor vehicle, presumptively at least, should have its situs under the circumstances here presented at the residence of the owner.

In this day of extensive travel over good highways, it would appear to be the safer and saner rule and the one which comports most with justice and good business practice that, absent any evidence at the time of the delivery of a chattel mortgage as to the location of the chattel, an inference arises that the situs of the mortgaged chattel was at the residence of the mortgagor. Once the residence of the mortgagor is established, as it was here, an inference arises that the mortgaged property is "situated" at his residence. It is then incumbent upon the person attacking the validity of the mortgage on the ground that the mortgaged property was not located in the county of the mortgagor's residence, to produce evidence against the inference, either to dilute or dissipate it. *Neighbors of Woodcraft v. Hildebrandt,* 98 Colo. 231, 54 P. (2d) 889. That the tractor inferentially was located at the residence of the mortgagor at the time of delivery and recordation of the chattel mortgage, in the absence of any evidence on the matter, is not affected by evidence of subsequent continual use over the highways of the country.

But we question the right of Kenworth to assail the chattel mortgage held by Rabtoay on the ground that it was not filed or recorded "in the office of the clerk and recorder of the county in which the mortgaged property is situated . . ." C.R.S. '53, 20-1-8. The general chattel mortgage statute (C.R.S. '53, 20-1-1 et seq.) is the applicable law for the effective filing or recording of the chattel mortgage on the tires in question. It is provided by section 20-1-1 that: "Except as otherwise provided for by law, no mortgage on personal property shall be valid against the rights and interests of any third person unless possession of such property be delivered to and

remain with the mortgagee or the mortgage be filed or recorded as provided for in this article.

"Any chattel mortgage, even though unacknowledged, may be recorded and filed as provided by law for acknowledged instruments and if executed and filed or recorded as so provided by law, shall be valid against third parties and shall constitute notice to the same effect as if such chattel mortgage were duly and properly acknowledged; but no such unacknowledged mortgage shall be admissible in evidence until the execution thereof has been properly established."

 Historically, recordation acts are the outgrowth of efforts to protect subsequent purchasers and creditors from secret liens. By recordation of a chattel mortgage, persons who subsequently deal with the chattel have constructive notice of the encumbrance. Effective notice works prospectively. This constructive notice is as effectual as actual notice. *Broadhead v. Farmers State Bank,* 72 Colo. 430, 211 Pac. 376. In a case where the purchaser of an automobile gave a purchase money chattel mortgage which was duly recorded, and the purchaser later bought tires under a title retention contract which also was recorded, and subsequently the seller of the automobile repossessed it, the seller of the automobile was held not entitled to retain the tires by virtue of the recordation act, since the seller of the automobile was not a subsequent purchaser but was a prior creditor, and therefore not protected by the act. *Goodrich Silvertown, Inc. v. Rogers,* 189 S.C. 101, 200 S.E. 91. See *United States v. Anders Contracting Co.,* 111 Fed. Supp. 700. We believe that the leading case of *Beatrice Creamery Co. v. Sylvester,* 65 Colo. 569, 179 Pac. 154, 13 A.L.R. 441 is authority for the same proposition. In that case, the holder of a duly recorded real estate mortgage sought to have included within the coverage of this mortgage two silos which were purchased and erected on the mortgaged real estate after the delivery and recordation of the real estate mortgage.

The contract for the sale and purchase of the silos contained a title retention provision, and also stipulated that the silos, even though annexed to the land or buildings of the purchaser, were removable by the seller at any time it felt insecure or default was made in payment. The silo contract was not recorded. The court held that *"a prior mortgagee* of the real estate, situated in the position of the defendant bank in the instant case, is not a 'third person' within the meaning of the chattel mortgage statute above discussed, in a case where the chattel mortgage, or an instrument which is in effect a chattel mortgage, is given upon chattels annexed to the real estate." (Emphasis supplied.)

In view of the foregoing authorities, we hold that Kenworth is not a third person within the meaning of the chattel mortgage statute, and hence is in no position to question the validity of the chattel mortgage covering the tires or the recordation thereof.

The very able briefs filed in this case contain considerable argument concerning the applicability of the law of accession. Accession, and the effect of the provision in the Kenworth chattel mortgage extending its effect to all tires thereafter "attached to or placed upon" the vehicle, will be considered together.

While the authorities are not in harmony on this question, we regard the law as enunciated in the case of *Tire Shop v. Peat,* 115 Conn. 187, 161 Atl. 96, more in consonance with our decisions as they reflect the law relating to fixtures. The *intent* not to merge the accessory with the principal article is generally the focal factor. As was said in *Tire Shop v. Peat, supra:* "The defendant makes a broader claim, that, by the terms of the sale of the automobile to Carney, the tires and tubes became subject to the provision that added or substituted parts or equipment placed upon the car are to become a component part of it and are included in the term 'car' as used in the bill of sale, and that therefore the plaintiff, when the tires and tubes were attached to

the car, lost all right or interest in them. *But while the defendant and Carney were free to make this agreement between themselves, they could not by its terms bind third persons not parties to it.* Davis v. Bliss, supra. *Title to the tires and tubes could pass to the defendant only through Carney, and he could pass only such title as he acquired in them by their purchase.* Wood v. Holly Mfg. Co., supra; Hodes v. Mooney, supra. But Carney never did acquire any property in them which was not subordinate to the plaintiff's rights. It necessarily follows that the defendant could only acquire a property in them subject to those rights. The doctrine of title by accession does not apply to the equipment of a car which the buyer and seller *do not intend to be merged into its structure and which is clearly distinguishable, and as readily detachable from it as are tires and tubes."* (Emphasis supplied.)

That the intention of the parties who place chattel property upon land is important in determining the question of whether it becomes a fixture has been frequently held by this court. *Beatrice Creamery Co. v. Sylvester, supra; Dawson v. Scruggs-Vandervoort Co.,* 84 Colo. 152, 268 Pac. 584; *Razatos v. Daniels & Fisher Stores Co.,* 110 Colo. 105, 131 P. (2d) 417, are a few decisions so holding. The analogy between personal property affixed to real estate retaining its identity as personal property, and an accessory attached to a principal article retaining its identity as an accessory, because so intended in each instance by the parties, appears apt.

With the advent of the motor age, much law has been written on the question of accessories becoming an integral part of an automobile by accession. It is stated in 1 C.J.S. 417 §4, (b): "In recent years the inapplicability of the principle of accession has been decided in several cases involving the rights of a conditional seller or *chattel mortgagee of an automobile* as against the conditional seller or *chattel mortgagee* of automobile acces-

sories." Some of the cases in which the doctrine of accession has been held inapplicable are *Bousquet v. Mack Motor Truck Co.,* 269 Mass. 200, 168 N.E. 800; *Goodrich Silvertown Stores v. Caesar,* 214 N.C. 85, 197 S.E. 698; *Goodrich Silvertown Stores v. F. M. Rugg Motor Sales Co.,* 137 Oh. St. 66, 27 N.E. (2d) 936; *Franklin Service Stations, Inc. v. Sterling Motor Truck Co.,* 50 R.I. 336, 147 Atl. 754; *Goodrich Silvertown, Inc. v. Rogers, supra; Free Service Tire Co. v. Manufacturers Accept. Corp., supra.*

Tires are detachable accessories and, unless intention to the contrary is clearly shown, are not merged in the motor vehicle upon which they are placed. Such is the rule enunciated in the foregoing cited cases. In line with these authorities we conclude that the trial court's determination that the tires did not retain their separate identity was erroneous.

In view of the law which should have been applied to this case the judgment is reversed, and the cause remanded with directions to the trial court to enter judgment in favor of the plaintiff in error, plaintiff below.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE SUTTON, and MR. JUSTICE HALL concurring.