**FIRST SECURITY BANK OF IDAHO,
N. A., a national banking association, Plaintiff,**

v.

**Fred CROUSE, d/b/a C & L Diesel
Service, Defendant.**

**Civ. A. No. 8609.**

United States District Court
D. Colorado.

March 21, 1966.

Hodges, Silverstein, Hodges & Harrington, Denver, Colo., for plaintiff.

Dilts & Hancock, Cortez, Colo., for defendant.

DOYLE, District Judge.

The above case was tried to the Court on stipulated facts, and on December 22, 1965, an Opinion was filed which expressed a viewpoint favoring the plaintiff but which at the same time expressed dissatisfaction with the palpable injustice of the result. Briefs were requested on the issue whether an "equitable" lien as distinguished from the statutory artisan's lien should be recognized. Upon the basis of the briefs together with our own more careful and further research we have modified our prior tentative viewpoint.

Essentially, the controversy is between a chattel mortgage lienholder and an artisan-garage mechanic who asserts a subsequent statutory lien arising from the performance of extensive repairs. Inasmuch as our former Opinion expresses views different from our present decision, the facts will be here recounted so that reference to the former Opinion will not be necessary.

On November 26, 1963 Earl Frederickson of Burley, Idaho, d/b/a as Snake River Livestock Co., purchased the vehicle in question, a 1960 Mack COE Truck from Glenn Dick Equipment Co. of Boise, Idaho. The sales price was $13,500.00, of which the sum of $11,475.-00 was financed. The credit instrument was a conditional sales contract which was assigned by the seller to First Security Bank of Idaho, a national banking institution. The conditional sales contract was duly recorded in accordance with Idaho law, and the lien in the amount of $11,475.00 was noted on the face of the title certificate which was subsequently issued.

Sometime prior to May 27, 1964, the date of the filing of this action, Frederickson defaulted. The exact date of this default is not revealed anywhere in the file. Plaintiff filed the present replevin action against defendant automotive serviceman who was holding the truck for payment of his substantial repair bill. The U. S. Marshal took possession of the truck pursuant to a writ of replevin issued by this Court.

Frederickson was in the livestock hauling business and he was engaged in this activity at the time of these happenings. His truck broke down near Cortez, Colorado, which is located in the southwest corner of Colorado. The driver called on defendant who towed it to his shop in Cortez. Defendant then contacted Frederickson in Burley, Idaho and received authorization from the latter to replace the transmission. Defendant proceeded to make the necessary repairs, expending $1,506.49 for parts and labor plus an additional sum for storage. Defendant's total charges amounted to $1,813.40.

Although defendant was deprived of possession as a result of the replevin seizure, the parties stipulated that this fact would not deprive him of any rights which he might have acquired as a result of his artisan lien.

Although the lien of plaintiff was perfected in Idaho, it has been tacitly agreed that the law of Colorado, being not substantially different from that of Idaho, applies, and that inasmuch as the artisan lien arose in Colorado, the Colorado statute relative to foreign mortgages, C.R.S. 1963, 13–6–32, applies.[1] This provision gives a foreign mortgage the same standing that a Colorado mortgage would have if the certificate of title bears a notation adequate to apprise a purchaser, mortgagee, or creditor of its existence.

It is recognized at the outset that the holder of a chattel mortgage is the favorite of the law. The statutes are in part responsible for this, but the judicial decisions have also upheld the mortgagee of a recorded mortgage against all contenders. Indeed there can be no quarrel with the underlying philosophy which encourages the financing which is the lifeblood of this trade. In the case of motor vehicles, the system of noting the lien on the certificate is fair in that it furnishes an easily accessible source of information. At the same time it is to be observed that notice contemplated by such method is less constructive in character than is recording, in that it looks to a source of actual notice. Unquestionably, the perfection of the lien and the notation of it on the certificate of title serves to protect the lien holder against subsequent purchasers, mortgagees, and most creditors. The contention of plaintiff is that the protection afforded by the statute is absolute and automatic—that the failure of defendant to obtain express consent from *it* prior to the making of the repairs operates to subordinate his lien. If this is accepted, it would follow that defendant mistakenly repaired and improved plaintiff's vehicle and that plaintiff is entitled to the truck in its repaired state. The harshness of the result under the circumstances here presented renders it unpalatable. If the law required strict adherence to the policy of upholding a noted lien, we would, of course, be constrained to pronounce and apply it regardless of its injustice or lack of reason. We conclude, however, that the law does not require that the chattel mortgage shall have priority in extreme circumstances such as those which are before us.

Numerous cases hold that a mortgagee of a chattel, which is of such a nature that it is likely to require repairs in the course of its use, who permits the mortgagor to retain possession is held to have impliedly authorized the mortgagor to

---

1. *"Foreign mortgages.*—No mortgage, as defined in section 13–6–2, on a motor vehicle, filed for record in any state other than the state of Colorado shall be valid and enforceable against the rights of subsequent purchasers for value, creditors or mortgagees, having no actual notice of the existence thereof. If the certificate of title for such vehicle, whether issued under the laws of this state or any other state, bears thereon any notation adequate to apprise a purchaser, creditor, or mortgagee of the existence of such mortgage at the time any third party acquires a right in the motor vehicle covered thereby, such mortgage and the rights of the holder thereof shall be enforceable in this state the same and with like effect as though such mortgage were filed in the state of Colorado and noted on the certificate of title in the manner prescribed in section 13–6–20."

contract for necessary repairs. The basis for most of these rulings is that the repairs are necessary to the preservation of the chattel, so that its commercial use can be continued for the benefit of both the mortgagor and mortgagee, and that they are in law contemplated when the mortgagee releases the vehicle to the mortgagor to go forth in commerce. Thus the basis for this narrow exception is the agreed commercial use by mortgagor of the vehicle, which use renders it necessary to keep the vehicle operating, plus the benefit which the mortgagee derives from the repairs. The mortgagor in contracting the essential repairs is actually advancing the interest of the mortgagee. The circumstances which give rise to such a conclusion of implied consent must be extreme in terms of necessity.

Many of the cases which imply an authorization to make repairs are collected in an extensive annotation reported in 36 A.L.R.2d 229 at 244. Cases from twenty-one jurisdictions are there noted. The author points out that the early cases recognizing the artisan's lien involved situations in which the intention of the parties was that the mortgaged property would be used by the mortgagor for the purpose of earning money with which to liquidate the mortgage debt, but subsequent cases have extended it to all cases where it was intended that the mortgagor use the property, which was of a kind likely to require repairs.

Seemingly, the leading case is an 1861 decision from England, that of Williams v. Allsup, 10 CB NS 417, 142 Eng. Reprint 514, which involved a shipwright's lien for repairs done at the instance of the mortgagor. It was held to enjoy priority over the mortgagee's interest, the Court saying that the mortgagee, having allowed the mortgagor to continue in apparent ownership of the vessel, making it a source of profit and a means of earning wherewithal to pay off the debt, the relationship by implication entitled the mortgagor to do all that might be necessary to keep the ship in an efficient state for that purpose, and

under the circumstances the mortgagor did that which was for the benefit of both parties.

In commenting on an early Massachusetts case, the author of the cited ALR note describes it as follows:

"With respect to a chattel mortgage of a hack stipulating that the mortgagor should retain possession for use in its stables, it was said in Hammond v. Danielson, (1879) 126 Mass. 294, that the mortgage lien would be subordinated to the lien of a repairman. The court said that it was the manifest intention of the parties that the hack should continue to be driven for hire and kept in a proper state of repair for that purpose, not merely for the benefit of the mortgagor but also for that of the mortgagee, by preserving the value of the security and affording a means of earning money to pay off the debt."

A relatively recent decision of the United States District Court for the then Territory of Alaska, Blackard v. City Nat'l Bank, (1956) 142 F.Supp. 753, 16 Alaska 344, is fully reasoned and persuasive. That Court's decision in favor of the artisan is based not only on the principle of implied consent, but also on broad equitable grounds—equities similar to those present at bar. The Court reasoned that the bank has the greater business acumen and has control of the chattel; that it is in a superior position to protect itself; that the mortgagee is benefitted by the improvement, the repairs having preserved and enhanced the value of the pledged vehicle so that fairness requires that the mortgagee pay for the improvements furnished.

The Restatement of the Law of Restitution, Sections 161 and 170, recognize the principle in question, and do so upon the basis of an obligation implied in both fact and *law* arising from the surrounding circumstances and from the fact of benefit conferred. Section 170 brings out the character of the right as follows:

"Where a person makes improvements upon the property of another or other-

wise increases its value, being induced by fraud, duress, undue influence, or mistake of such a character that he is entitled to restitution, he is entitled to an equitable lien upon the property. The person making the improvements * * * may be entitled to restitution of the value of the benefit conferred or the value of what he has expended. Where he is entitled to such restitution, he is entitled to enforce an equitable lien upon the property improved to secure his right. * * * "

Professors Storke and Sears, in their excellent work on security transactions, Storke and Sears, Colorado Security Law, 1955, Sec. 24, p. 87, have recognized that the artisan is entitled to prevail in some circumstances—when the mortgagor can be said to have had implied authority to contract for the repairs. The authors have noted that:

" * * * an artisan's lien for work done on personal property will be subordinated to prior recorded mortgages, unless the mortgagor has express or implied authority to contract for the repairs or the work in question * * * This rule presents special difficulties in the case of a garageman who repairs an automobile at the request of a mortgagor. It has been argued that the mortgagor has implied authority to contract for such repairs, particularly if they result from ordinary wear and tear."

The Colorado cases have not been inclined to find implied consent to contract repairs, but the circumstances of extreme necessity, benefit, and commercial use have not been present in the cases which have been decided. In Hawkes v. First National Bank, (1924) 75 Colo. 47, 224 P. 224, the Supreme Court held a valid recorded chattel mortgage to be superior to a lien for repairs which were made following a collision. The Court pointed out that the repairs were disproportionately large in relationship to the value of the vehicle and that the circumstances did not justify a holding of implied authority of the mortgagor to contract the repairs. Also, in Walker v. Mathis, (1925) 78 Colo. 384, 242 P. 68, it was again held that the circumstances did not justify a conclusion of implied consent. On the other hand, in its more recent decision in Rabtoay General Tire Co. v. Colo. Kenworth Corporation, (1957) 135 Colo. 110, 309 P.2d 616, the Court gave priority to the purchase money mortgage given to a subsequent seller of tires, holding that the tires retained their separate identity. The mortgagor's implied authority or the mortgagee's implied consent was not discussed. The significant conclusion to be drawn from these Colorado cases is that the Supreme Court has not ruled out the possibility that extreme circumstances, showing a high degree of necessity for the contracting of necessary repairs by the mortgagor, could produce a result different from that reached in *Hawkes* and *Walker*.

It was no doubt this uncertain state of the law which moved the Colorado General Assembly to "slip in," so to speak, an amendment to the recently adopted (but not yet effective) Uniform Commercial Code. The orthodox version of the Uniform Code (Section 9–310) gives the artisan's lien a preference over a perfected security interest. It provides:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services take priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

▮ Before it passed the Colorado General Assembly, the words "does not" were inserted in front of the words "take priority" so that when this measure becomes law on July 1, 1966, the lien of the security holder will be absolute. See C.R.S., 1963, 155–9–310. The significance of this amendment seems to have escaped the annotator. He commented that the amendment was insubstantial, and included a note which explains that

the purpose of the section is to give to liens for work which enhances the value of the security a priority over an earlier perfected security interest. Counsel for plaintiff argues that this Colorado enactment should be given strong persuasive force even though it is not yet effective—that it shows that the policy favorable to the security interest holder is thereby shown to be strong. It might be persuasive to some listeners; it leaves us unmoved.

 Our conclusion is that, at the time of these repairs and now, the law of Colorado is open to the conclusion that an artisan's lien is, in circumstances like the present ones, entitled to priority over a previously perfected security interest. Here, plaintiff's security was a truck which was to be used for the movement interstate of cattle. It also was contemplated that substantial repairs resulting from ordinary wear and tear would become necessary at some time. The commercial use of the vehicle as a part of the operation, including the payment of the installments, was in the view of the parties. The replacement of the transmission conferred a substantial benefit— a benefit which would operate to unjustly enrich plaintiff if it were to succeed in obtaining the truck free of defendant's lien. The title was not even shown to have been in the possession of the driver. Counsel for plaintiff suggested during oral arguments that it might have been in plaintiff's possession. If defendant had refused to take the risk of repairing the truck, plaintiff would have been required to order the repair or abandon it. The latter course would not have been possible. Thus the standards found in the cases are fully satisfied, and the conclusion that the mortgagor-owner had implied authority of the mortgagor to order the instant repairs on behalf of plaintiff flows logically from the facts. Furthermore, prevention of unjust enrichment calls for the imposition of an obligation to pay for the benefit conferred.

We modify our former Opinion and hold that upon an analysis of the applica-

ble legal material, the defendant is entitled to relief on his claim for the repairs and storage in the total amount of $1,813.40, plus interest. Each party shall pay his own costs. The clerk is Ordered to enter judgment accordingly.